UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| COMING CLEAN, INC. and ) <br> ALE Enterprise, LLC ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SERVICEMASTER ) <br> RESIDENTIAL/COMMERCIAL ) <br> SERVICES LIMITED PARTNERSHIP, ) <br> ) <br> Defendant. ) | Civil Action No: <br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, Coming Clean, Inc. and ALE Enterprise, LLC, by their attorneys, for their complaint against Defendant in this action alleges as follows:

### Nature of Action

1.  This is an action arising from Defendant Servicemaster Residential/Commercial Services Limited Partnership's ("Servicemaster") unlawful termination of four franchises of ALE Enterprise, LLC ("ALE") and the resulting injury to Coming Clean, Inc. ("Coming Clean"). ALE seeks damages for wrongful termination and Coming Clean seeks damages for tortious interference with contract.

2.  In brief, Coming Clean, a company owned by Jorge Valdes, who is of Hispanic ancestry, owned four valuable ServiceMaster franchises for performing

disaster restoration services in Georgia; in 2012, it sold those franchises to ALE, a company owned by Luis Morales, also of Hispanic ancestry, for the sum of $605,000, to be paid back pursuant to a promissory note and equity pledge agreement giving Coming Clean a security interest in ALE and certain other collateral. In 2016, ALE began to experience financial distress and searched for a buyer of the business. Ordinarily, ServiceMaster, in the usual course of its business, works with financially distressed franchisees to arrange a payment plan or a sale of their businesses to another franchisee. Morales was successful in locating two prospective buyers and was in the process of arranging for a sale when, in December 2016, ServiceMaster, without warning or notice, terminated all four franchises, with knowledge of both Coming Clean's security interests and the prospective purchasers. The termination rendered ALE worthless and unable to pay the promissory note to Coming Clean. As a result, ServiceMaster is liable to ALE for wrongful termination and to Coming Clean for breach of contract, tortious interference with contract, unjust enrichment and violation of federal laws against discrimination. ALE and Coming Clean have each been injured in an amount exceeding $650,000, for which they seek recovery.

## Jurisdiction and Venue

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that it arises under the laws of the United States, and under 28 U.S.C. § 1332 in that the parties

are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. The Court also has federal question jurisdiction as suit is brought in part pursuant to 42 U.S.C. § 1981.

5. Venue is proper in this district because the facts and circumstances giving rise to the claims arose in this district and the injuries Defendants suffered were suffered in this district.

## **Parties**

6. ALE is a limited liability company formed under the laws of the state of Georgia whose members are citizens and residents of Georgia.

7. Coming Clean is a corporation duly formed under the laws of the State of Georgia and in good standing, with its principal place of business in the State of Florida.

8. ServiceMaster is a Delaware limited partnership with its principal place of business in Memphis, Tennessee. Upon information and belief, none of ServiceMaster's partners are citizens of Georgia. ServiceMaster's registered agent in Georgia is CT Corporation System, 289 S. Culver St., Lawrenceville, Georgia 30046-4805.

## **Facts**

9.     ServiceMaster is a multi-billion-dollar public company that owns eight brands, including ServiceMaster, Terminex, Merry Maids, AmeriSpec and American Home Shield.  At all relevant times, it has been engaged in franchising individuals and their businesses to do janitorial and disaster restoration work.  Disaster restoration work consists of assisting homeowners and business owners to clean up and restore their premises after natural disasters such as fire, flood, tornadoes or hurricanes.  ServiceMaster enters into franchise agreements with its franchisees for a period of five years that is renewable at the end of its term.  In exchange for the right to use the ServiceMaster name and trademarks, as well as its system and supplies, franchisees pay ServiceMaster a royalty of 10 percent of the franchisee's gross sales.  In the disaster restoration field, most of the work done by ServiceMaster franchisees is pursuant to homeowners' insurance policies that cover the loss; typically, ServiceMaster maintains relationships with major insurers.  When a disaster hits an insured homeowner or business, the homeowner or business contacts their insurer, who in turn contacts ServiceMaster.  ServiceMaster then refers the claim to a local franchisee to do the work, who is then compensated by the insurance company.

10.     Prior to 2012, Coming Clean had four Servicemaster licenses in Georgia for areas in Carroll, Coweta, Fayette and Meriwether, Georgia. Coming Clean was operated largely by Coming Clean's principal employee, Luis Morales.

11.     In June 2012, due to differences with ServiceMaster, Coming Clean undertook to sell the business and the franchises to ALE, a business formed by Morales, for a total sum of $605,000 to be paid by a promissory note, with interest. Servicemaster, however, which must approve the sale of the franchise, delayed the transfer for a year, even though, in the ordinary course, ServiceMaster approves sales within a few weeks. As a result of Servicemaster's delay, the business suffered: (a) customers were reluctant to deal with Morales, because he was not the owner of the business yet; (b) State Farm Insurance, a source of a substantial amount of business, was made unavailable to Morales and Ale; (c) Because of Servicemaster's delay in approving the transfer, ALE encountered difficulties in making bank deposits, executing paperwork and other tasks.

12.     Upon information and belief, Servicemaster delayed the transfer of the franchise from Coming Clean to ALE because they are both owned by persons of Hispanic descent. In contrast, during the same time frame, ServiceMaster approved transfer of a franchise to a company owned by a white male in 45 days or less.

13.     In order to secure payment of the purchase price on the note, Morales entered into an equity pledge agreement with Coming Clean pursuant to which all

of the interests in ALE Enterprise were pledged as security to Coming Clean. This transaction was reviewed and approved by ServiceMaster, which was well aware of the equity pledge agreement and the promissory note.

14. Morales and ALE proceeded to operate the businesses as franchises for the next few years. During that time, however, Servicemaster delayed in approving ALE for programs to obtain referrals from insurance companies, thereby weakening the franchise further. Additionally, ServiceMaster sold another franchise within ALE's territory to another company controlled by a white male, Steve Morgan; the sale of the franchise to Morgan further damaged ALE's ability to attract and retain customers. The effect of the foregoing course of action was to substantially weaken a once-strong franchise, so as to impair its ability to pay its bills in the ordinary course.

15. In the ordinary course of business, some ServiceMaster franchisees become financially distressed, as the business of disaster restoration depends upon the occurrence of natural disasters and fluctuates over time. ServiceMaster typically works with such franchisees to get past their difficulties by developing a payment plan for the franchisee to catch up on its financial obligations; and an action plan to achieve profitability; during this time, Servicemaster forbears on either collecting what it is owed by the franchisee or taking action to terminate the franchisee;

alternatively, Servicemaster permits distressed franchisees to sell their businesses to other franchisees.

16. In December 2016, ALE and ServiceMaster had adopted a payment plan to permit ALE to catch up on its financial obligations. That payment plan modified the franchise agreement to provide that ServiceMaster would not terminate ALE's franchises without a sustained failure of ALE to pay or to negotiate terms and without prior written notice and a reasonable opportunity to cure. Without forewarning, any attempt to resolve issues or notice and an opportunity to cure, Jay Karoney, a Servicemaster employee, ended ALE's payment plan summarily and terminated all four franchises of ALE. Upon information and belief, ServiceMaster terminated the franchises in order to grant those territories to a larger, and favored, non-Hispanic franchisee and to avoid having ALE's franchises go back into the hands of Coming Clean, another Hispanic-owned business. Indeed, Karoney had expressed his dislike for Morales previously. ServiceMaster terminated the franchise with knowledge that doing so would make it impossible for Morales and ALE to pay Coming Clean for the value of the business and the purchase price that it had negotiated.

17. Following the termination, Coming Clean, through counsel, repeatedly attempted to negotiate with ServiceMaster in an attempt to restore the franchise,

either to ALE or to Coming Clean, so that Coming Clean could be made whole for the value of the sale of its business to ALE. In each instance, ServiceMaster refused.

18. As shown below, ServiceMaster has wrongfully terminated ALE's franchise and has and tortiously interfered with Coming Clean's contracts, has discriminated against it and has been unjustly enriched.

### FIRST CLAIM FOR RELIEF
### (ALE – Breach of Contract – Wrongful Termination)

19. Plaintiffs repeat and re-allege the allegations set forth above as though fully set forth herein.

20. Servicemaster breached its agreements with ALE by first delaying approval of transfer of the franchises to it, refusing to assign work from State Farm to it, and by placing another franchisee in its territory; and, second, by terminating its franchises without attempting to work out its differences, without a sustained failure to pay, and without notice and an opportunity to cure.

21. As a result of Servicemaster's wrongful conduct, ALE has been injured in an amount in excess of $600,000.

### SECOND CLAIM FOR RELIEF
### (Tortious Interference with Contract)

22. Plaintiffs repeat and re-allege the allegations set forth above as though fully set forth herein.

23. Coming Clean had an agreement with ALE and Morales for payment of the promissory notes and security in the form of the equity pledge agreement. At all relevant times ServiceMaster was aware of these agreements.

24. ServiceMaster wrongfully and maliciously terminated ALE's franchises knowing that such termination would destroy the value of the promissory note and equity pledge agreement.

25. As a result of ServiceMaster's wrongful termination of the franchise agreements, Coming Clean has lost the value of the promissory note and equity pledge agreement in an amount no less than $600,000.

26. ServiceMaster's actions are and were wrongful and unlawful and in violation of the rights of Coming Clean. Therefore, it is entitled to recover punitive damages in an amount no less than $1 million.

**THIRD CLAIM FOR RELIEF**
**(ALE - Discrimination)**

27. Plaintiffs repeat and re-allege the allegations set forth above as though fully set forth herein.

28. Under 42 U.S.C. § 1981, discrimination in the making and enforcement of contracts is prohibited.

29. ServiceMaster violated 42 U.S.C. § 1981 by terminating the franchise agreements of ALE solely or principally because ALE was a Hispanic-owned business.

30. As a result of ServiceMaster's wrongful conduct, ALE has been injured in an amount of no less than $600,000, to which it is entitled to recovery.

### FOURTH CLAIM FOR RELIEF
### (Coming Clean - Discrimination)

31. Plaintiffs repeat and re-allege the allegations set forth above as though fully set forth herein.

32. Under 42 U.S.C. § 1981, discrimination in the making and enforcement of contracts is prohibited.

33. ServiceMaster violated 42 U.S.C. § 1981 by terminating ALE as a franchise when it knew that Coming Clean had a security interest in the franchises and business and that termination would render the businesses worthless. Servicemaster did so because both ALE and Coming Clean are owned by persons of Hispanic heritage.

34. As a result of ServiceMaster's wrongful conduct, Coming Clean has been injured in an amount of no less than $600,000, to which it is entitled to recover.

### FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

35. Plaintiffs repeat and re-allege the allegations set forth above as though fully set forth herein.

36. As a result of ServiceMaster's unlawful termination of ALE's franchise agreements, it has been unjustly enriched in the amount of the value of those franchises.

37. In equity and good conscience, ServiceMaster should return to Coming Clean the value of the franchises which it wrongfully obtained through its termination of ALE.

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Award damages to ALE of no less than $600,000 for Servicemaster's wrongful termination of ALE's franchises;

B. Award damages to Coming Clean of no less than $600,000, plus punitive damages for ServiceMaster's unlawful interference with Coming Clean's contractual relations;

C. Award damages to ALE of no less than $600,000 plus attorneys' fees for ServiceMaster's discriminatory and unlawful termination of the ALE Franchises;

D. Award damages to Coming Clean of no less than $600,000 plus attorneys' fees for ServiceMaster's unlawful and discriminatory interference with Coming Clean's contractual relations;

E. Award damages to Plaintiffs in the amount by which ServiceMaster was unjustly enriched, by the termination of ALE's franchises; and

F. Award such other and further relief as the Court deems just and proper.

Respectfully submitted December 10, 2018, by:

**KATZ DURELL, LLC**

/s/Joshua Katz
Joshua Katz
GA Bar No. 408979
Seth Katz
GA Bar No. 197411
Katz Durell, LLC
1117 Perimeter Center West, Ste. N-500
Atlanta, GA 30338
Tel. (404)487-0040
Fax (404) 420-2190
jkatz@katzdurell.com
skatz@katzdurell.com

Counsel for Plaintiffs